[Cite as *In re R.M.*, 2020-Ohio-4446.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  R.M.                                :          APPEAL NO. C-190420
                                                       TRIAL NO.    19-2753X


                                           :          *O P I N I O N.*


Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 16, 2020


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Appellee State of Ohio,

*Raymond T. Faller,* Hamilton County Public Defender, and *Julie Kahrs Nessler,* Assistant Public Defender, for Appellant R.M.

**CROUSE, Judge.**

{¶1} Appellant R.M., a minor child, was adjudicated delinquent for carrying a concealed weapon, a fourth-degree felony if committed by an adult. He was committed to the Ohio Department of Youth Services ("DYS") for an indefinite term of a minimum of six months and a maximum not to exceed his attainment of the age of 21.

{¶2} R.M. has appealed, arguing in three assignments of error that: (1) the juvenile court violated his right to due process when it committed him to DYS, (2) the juvenile court violated his right of allocution by not allowing his defense counsel to fully argue in disposition, and (3) the juvenile court abused its discretion in committing him to DYS.

{¶3} Shortly before oral argument, R.M. filed a motion withdrawing his third assignment of error. For the following reasons, we overrule the two remaining assignments of error and affirm the judgment of the juvenile court.

### *Factual Background*

{¶4} At a hearing on June 11, 2019, R.M. admitted to the charge of carrying a concealed weapon ("CCW") in violation of R.C. 2923.12. The magistrate accepted R.M.'s admission to the charge, put R.M. on electronic monitoring ("EMU"), and set the matter for a dispositional hearing in front of the juvenile court judge on July 10, 2019.

{¶5} At the July 10 hearing, the probation department requested a continuance because it needed additional time to provide the court with more

information and options to consider in its disposition. The court denied the request and proceeded with the disposition.

{¶6} At the hearing, the court cited to the predisposition investigation report ("PIR"), which included statements from R.M.'s mother indicating that since the June 11 hearing, R.M. had continued to be incorrigible in the home and had created a hostile and threatening environment. According to R.M.'s mother, R.M. had been throwing "trash on the side of the house * * * sitting outside with his leg in the door, smoking Black and Milds, using a knife to carve at my front door. He's torn down all of my curtains, destroying items in the house, trashing my living room and being verbally abusive." Mother also took a screen shot of R.M. "flashing a gun on Facebook." Mother "pleaded" with the court that R.M. be removed from the home.

{¶7} The court asked R.M. if he had anything to say. R.M. stated, "I try my best for real * * * But I'm not that kind of person. I just get mad over – not little stuff. It be stuff I feel like worth getting mad over."

{¶8} The court stated that it was committing R.M. to DYS. It discussed R.M.'s previous encounters with the juvenile justice system and services offered to him. It stated that it was "not going to tolerate somebody that goes home, who is released on a firearms charge, and then has a * * * knife in the house, is throwing trash around and everything else that I just put in the record while they're in the most sensitive aspect of the case."

{¶9} Defense counsel then moved for a continuance, claiming she "was not expecting [disposition] to be a part of the hearing today" due to the probation department's request for a continuance. She stated that she was "not aware that the court would be in disagreement with [probation's request for a continuance]."

Counsel also argued against commitment to DYS. She stated that R.M. had not violated EMU, had graduated from the Community Action Youth Build program, and was prepared to start the Lawn Life program on July 11, which she described as a "positive community program—work program with mentors involved in that as well." The court denied the request for a continuance and ordered R.M. committed to DYS.

{¶10} R.M. filed a motion to stay and modify disposition, and the court held a hearing on the motion on July 16, 2019. At the hearing, defense counsel discussed multiple alternatives to DYS and reiterated that R.M. had previously completed the Community Action Agency Youth Build program and had graduated with several construction certificates. Counsel also stated that R.M. and his mother had some conversations "they've never had before" in order to improve their communication and relationship.

{¶11} The state argued in support of commitment to DYS and offered several photographs and videos into evidence. The court admitted two photographs of R.M. holding what appears to be a handgun, and a photograph showing cut marks all over the door to his mother's house, which, according to his mother, were caused by R.M. "knifing up the door." The court also admitted two videos of R.M. insulting and cursing at his mother. The state emphasized R.M.'s anger issues and incorrigible behavior, and stated, "You don't know what's going to happen when a kid with that amount of anger is carrying a firearm."

{¶12} The court noted that at the July 10 disposition, R.M.'s demeanor was "exceptionally different than it is today," and that he had "almost a smirk on his face" at the July 10 hearing. The court described the situation at home as "volcanic," noted

that R.M.'s outbursts began the day after his release on EMU, and described R.M.'s behavior as "outrageous." It then overruled R.M.'s motion to modify disposition.

*First Assignment of Error*

{¶13} In his first assignment of error, R.M. contends that the juvenile court violated his right to due process when it committed him to DYS at the July 10 hearing. R.M. argues that the court committed R.M. based on uncharged conduct, i.e., his mother's statements in the PIR, and not based on his underlying adjudication.

{¶14} A court speaks through its entries. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29; *State v. Smith*, 1st Dist. Hamilton Nos. C-080712 and C-090505, 2009-Ohio-6932, ¶ 38. In its entry of permanent commitment to DYS, the court stated that R.M. was adjudicated delinquent for committing an act "which if committed by an adult would constitute a felony of the fourth degree, to wit: a violation of R.C. 2923.12." Thus, it is clear from the record that the CCW charge was the basis of R.M.'s commitment.

{¶15} Furthermore, it was proper for the court to rely on the information in the PIR, including the statements from R.M.'s mother about his behavior in determining an appropriate disposition in this case. When determining a disposition, "the court must look at not only the delinquent act but also the overall conduct and behavior of the juvenile, the juvenile's history, the remorse shown by the juvenile and other societal factors that determine what length of commitment is appropriate for rehabilitation." *In re Caldwell*, 76 Ohio St.3d 156, 160, 666 N.E.2d 1367 (1996). At a dispositional hearing, the juvenile court "may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and

documentary evidence." Juv.R. 34(B)(2). Thus, the court had wide discretion regarding what evidence to consider in its disposition.

{¶16} R.M.'s conduct between when he admitted to the charge on June 11 and the dispositional hearing on July 10 was material and relevant to his disposition. It demonstrated whether R.M. was likely to repeat the conduct which led to the charge, whether he was remorseful, and whether he would comply with court orders if his disposition included community control. *See, e.g., In re K.M.C.,* 8th Dist. Cuyahoga No. 103449, 2016-Ohio-5322, ¶ 7 (where the court, in determining disposition, considered the offender's conduct in the detention center during the pendency of the case); *In re W.P.P.,* 4th Dist. Washington No. 15CA34, 2016-Ohio-345, ¶ 15 (in determining disposition, the court considered the offender's failure to follow detention center rules and his behavior at school).

{¶17} At the July 10 hearing, defense counsel did not object to the fact that the court considered mother's statements in its decision. Rather, counsel argued that she needed a continuance in order to properly prepare for disposition because she was not aware of mother's concerns regarding R.M.'s behavior and needed time to investigate. However, R.M. does not assign as error on appeal the court's denial of the motion for a continuance. Also, any error that may have arisen from the denial of the continuance was cured because the court heard additional argument from defense counsel at the July 16 hearing, after counsel had the opportunity to investigate R.M.'s mother's statements. Notably, R.M. did not deny that any of the incidents described by his mother occurred. Rather, he apologized for his conduct and pointed to his efforts to improve his behavior.

{¶18} The court cited to R.M.'s conduct at home as reasons why it committed him to DYS, but his conduct at home was not the charge upon which he was committed. He was committed for CCW in violation of R.C. 2923.12. The court's consideration of his conduct in the interval between his adjudication and disposition was entirely proper. The first assignment of error is overruled.

### Second Assignment of Error

{¶19} In his second assignment of error, R.M. contends that the juvenile court violated his right of allocution by not allowing his counsel to fully argue on his behalf. He argues that the court determined disposition before allowing his attorney to address the court.

{¶20} Pursuant to Crim.R. 32(A)(1), at the time of imposing sentence the court must afford a defendant and defense counsel allocution, i.e., the opportunity to address the court and present information in mitigation. A juvenile defendant has a right of allocution before disposition. *In re K.S.J.,* 2d Dist. Montgomery No. 24387, 2011-Ohio-2064, ¶ 10; *In re R.D.G.,* 12th Dist. Butler No. CA2010-12-323, 2011-Ohio-6018, ¶ 20.

{¶21} At the July 10 disposition hearing, the court heard from R.M. directly and from the state. Then it stated, "You are being committed to [DYS] for a minimum period of six months to the time you're 21." The court then heard from R.M.'s counsel, who requested a continuance, but also argued against commitment to DYS.

{¶22} "A trial court does not violate a defendant's rights under Criminal Rule 32(A) when it affords the defendant his or her right to allocution after the trial court sets forth the terms of its sentence at the sentencing hearing, but before it

journalizes the sentencing entry." *State v. Robinson*, 9th Dist. Summit No. 29192, 2019-Ohio-1740, ¶ 18. "A sentence is not finalized until the trial court files its sentencing entry and, up until that time, anything it says about what that sentence would be is tentative." *Id.*; *see Smith*, 1st Dist. Hamilton Nos. C-080712 and C-090505, 2009-Ohio-6932, at ¶ 38 (a court speaks through its sentencing entries).

{¶23} The court heard from R.M. and R.M.'s counsel during the disposition hearing and before it entered its entry of commitment to DYS. The court's announcement of its intention to commit R.M. to DYS before hearing from R.M.'s counsel did not violate his right to allocution. The second assignment of error is overruled.

### *Conclusion*

{¶24} R.M.'s first and second assignments of error are overruled and his third assignment of error is withdrawn. The judgment of the juvenile court is affirmed.

Judgment affirmed.

**MYERS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

8